**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STANLEY WILLIAMSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**HEALTHCARE SERVICES GROUP, INC.,**<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff Stanley Williamson ("Plaintiff") brings this class action individually and on behalf of all others similarly situated against Defendant Healthcare Services Group, Inc. ("HSG" or "Defendant") for its failure to properly secure and safeguard the sensitive Personal and Health Information of approximately 624,496 individuals. Plaintiff's and Class Members' information was compromised in a massive and preventable data breach that Defendant detected on or about October 7, 2024 (the "Data Breach").[1]

2. Defendant is a Pennsylvania-based national provider of housekeeping, dining, and nutritional services to the healthcare industry, including nursing homes, retirement complexes, rehabilitation centers, and hospitals. In the course of its business, Defendant collects and stores vast amounts of highly sensitive personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") of its employees and its clients' patients.

3. The Data Breach involved an unauthorized third-party gaining access to Defendant's network between September 27, 2024, and October 3, 2024, and exfiltrating files

[1] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/9a82ac2b-5379-462d-acd6-26a3b3bd0b30.html (last accessed Sept. 9, 2025).

containing the Private Information of Plaintiff and Class Members. The compromised Private Information includes a trove of data highly coveted by cybercriminals, including: full names, Social Security numbers ("SSN"), driver's license and state identification numbers, dates of birth, financial account information, credit and debit card numbers, medical information, and health insurance information.

4. Exacerbating the harm, Defendant inexcusably delayed notifying victims for nearly eleven months. Despite discovering the breach on October 7, 2024, HSG did not begin sending notice letters to affected individuals until on or around August 25, 2025. This unreasonable delay deprived Plaintiff and Class Members of the ability to take timely and appropriate steps to mitigate the harm and protect themselves from the consequences of the breach.

5. As a direct result of Defendant's misconduct, Plaintiff's and Class Members' Private Information is now in the hands of cybercriminals, placing them at a significant, imminent, and ongoing risk of identity theft, medical identity theft, financial fraud, and other forms of criminal misuse for years to come. These are not hypothetical risks; Plaintiff Williamson has already experienced fraudulent charges on his credit card since the Data Breach.

6. Armed with the stolen Private Information, data thieves can open new financial accounts, file fraudulent tax returns, obtain medical services, take out loans, and commit numerous other crimes in the names of Plaintiff and Class Members. The consequences are long-lasting and severe, as stolen SSNs and PHI are difficult, if not impossible, to change and are trafficked on the dark web for years.

7. Plaintiff and Class Members have suffered and will continue to suffer concrete injuries, including: the loss of privacy; the imminent and certainly impending risk of fraud and identity theft; actual financial losses and fraudulent activity; the diminution in value of their Private

Information; and ascertainable losses in the form of out-of-pocket expenses and the value of their time spent monitoring their accounts, dealing with fraudulent activity, and otherwise attempting to mitigate the effects of the Data Breach.

8. Defendant's offer of just twelve months of credit monitoring services is wholly inadequate to protect Plaintiff and the Class from the lifelong risk of identity theft and fraud they now face due to the permanent exposure of their most sensitive data.

10. Plaintiff brings this action to hold Defendant accountable for its negligent conduct, to seek redress for the harms suffered by himself and the Class, and to obtain injunctive relief compelling Defendant to implement robust data security measures to protect the Private Information it continues to maintain.

11. On behalf of himself and the Class, Plaintiff seeks an award of damages, including actual, statutory, and punitive damages; restitution and disgorgement of profits; and comprehensive injunctive relief, including an order requiring Defendant to improve its data security, submit to third-party audits, and provide lifetime credit monitoring and identity theft protection to all affected individuals.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which: (a) the number of Class Members is greater than 100; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) there is minimal diversity, as at least one Class Member, including Plaintiff Stanley Williamson (a citizen of Florida), is a citizen of a state different from Defendant (a citizen of Pennsylvania).

14. This Court has personal jurisdiction over Defendant because Defendant maintains

its principal place of business and corporate headquarters in Bensalem, Pennsylvania, within this District. Defendant regularly conducts substantial business in this District, has sufficient minimum contacts with this State, and has purposefully availed itself of the laws and markets of this Commonwealth, rendering the exercise of jurisdiction by this Court both proper and just.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Defendant resides in this District as its principal place of business is located here, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's and the Class's claims occurred in this District, including Defendant's deficient data security practices and policies which were formulated, implemented, and managed from its headquarters within this District.

## PARTIES

### I. Plaintiff

16. Plaintiff Stanley Williamson is a natural person and a citizen and resident of Gainesville, Florida. Plaintiff worked for Defendant from November 8, 2017 to March 2022. As a condition of his employment, Plaintiff was required to provide Defendant with his sensitive Private Information, including his Social Security number, driver's license information, and direct deposit financial account information. Plaintiff received a notice letter from Defendant confirming that his information was compromised in the Data Breach. As a direct and proximate result of the Data Breach, Plaintiff has suffered actual injury, including fraudulent charges to his credit card account and faces an imminent and ongoing risk of future identity theft and fraud.

### II. Defendant

17. Defendant Healthcare Services Group, Inc. is a Pennsylvania corporation with its principal place of business located at 3220 Tillman Drive, Suite 300, Bensalem, Pennsylvania 19020.

## FACTUAL ALLEGATIONS

### I. Defendant's Business and its Duty to Safeguard Private Information

18. Defendant Healthcare Services Group, Inc. ("HSG") provides management, administrative, and operating expertise and services to the housekeeping, laundry, linen, facility maintenance and dietary service departments of healthcare facilities, including nursing homes, retirement complexes, rehabilitation centers, and hospitals. Upon information and belief, it serves over 2,600 facilities across the United States and employs approximately 35,700 people.

19. In the regular course of its business, and as a condition of employment or receiving services, HSG collects, stores, and benefits from vast quantities of highly sensitive Private Information of its employees and its clients' patients, including Plaintiff and the Class Members. This information includes, but is not limited to, Social Security numbers, driver's license numbers, financial account information, medical records, and health insurance information.

20. By obtaining, collecting, and storing this Private Information, HSG assumed legal and equitable duties to Plaintiff and the Class to protect and safeguard that information from unauthorized access and disclosure.

21. HSG was well aware of its duties and the risks associated with failing to protect the data it held. HSG maintains a public-facing Information Security Policy in which it represents that it is "committed to protecting its information technology systems, network, information, and data assets . . . from threats." The policy promises to "[s]afeguard its IT System and Assets, and data belonging to its customers, vendors, employees, and service providers," stating that compliance with the policy "minimizes the risk of breaches of confidentiality."[2]

---

[2] HCSG Information Security Policy, HCSG CORP., http://q4live.s205.clientfiles.s3-website-us-east-1.amazonaws.com/240025483/files/doc_downloads/gov_docs/HCSG-Information-Security-Policy-Approved-October-24-2023.pdf (last accessed Sept. 9, 2025).

22. Plaintiff and the Class Members provided their Private Information to HSG with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure, as required by law, industry standards, and Defendant's own representations.

**II. The Data Breach**

24. Between approximately September 27, 2024, and October 3, 2024, an unauthorized third party infiltrated HSG's inadequately secured computer network and gained access to a trove of sensitive files. The cybercriminals exfiltrated—or stole—this data, which contained the Private Information of approximately 624,496 individuals.

25. On or about October 7, 2024, HSG detected suspicious activity and became aware of the massive Data Breach.

26. The Private Information compromised in the Data Breach is a gold mine for identity thieves and includes, but is not limited to, full names, Social Security numbers, dates of birth, driver's license and state identification numbers, financial account information (including credit and debit card numbers), and protected health and health insurance information.

27. The Private Information contained in the stolen files appears to have been unencrypted. Had the data been properly encrypted, the unauthorized actors would have acquired only unintelligible data, not the sensitive Private Information of Plaintiff and the Class.

**III. Defendant's Untimely and Inadequate Notice**

29. Despite discovering the Data Breach on October 7, 2024, and knowing that highly sensitive Private Information had been stolen and published on the dark web, HSG waited nearly eleven months to begin notifying victims.

30. On or about August 25, 2025, HSG finally began sending a vague and insufficient

notice letter to Plaintiff and Class Members, informing them of the "incident."

31. This unreasonable and inexcusable delay deprived Plaintiff and the Class of the opportunity to take timely and appropriate measures to protect themselves from identity theft and fraud, such as placing fraud alerts on their credit files, freezing their credit, and changing passwords on financial accounts. This delay exacerbated the harm suffered by all victims.

32. The notice letter also omitted crucial details about the Data Breach, including its root cause, the specific security vulnerabilities exploited by the attackers, and what concrete remedial measures HSG has undertaken to prevent a similar breach in the future. Without these details, Plaintiff and Class Members cannot adequately assess their risk or take appropriate steps to protect themselves.

33. Furthermore, HSG's offer of a mere twelve months of credit monitoring is woefully inadequate. The Private Information stolen, particularly Social Security numbers and health information, is immutable and will remain in the hands of criminals for the lifetime of Plaintiff and Class Members, subjecting them to a perpetual risk of fraud and identity theft.

**IV. Defendant's Failure to Maintain Reasonable Security**

34. The Data Breach was a direct result of HSG's failure to implement and maintain reasonable and appropriate data security procedures and practices, which are standard in the industry. The attack was not novel or sophisticated; it was foreseeable and preventable.

35. At all relevant times, HSG knew or should have known that its systems were a target for cybercriminals. The healthcare industry is notoriously targeted by hackers due to the high value of PII and PHI on the black market. The Federal Bureau of Investigation ("FBI"), Federal Trade Commission ("FTC"), and other government agencies have issued repeated warnings to the healthcare industry about the rising threat of cyberattacks.

36. HSG failed to heed these warnings and breached its duties by failing to implement adequate security measures consistent with industry standards. Upon information and belief, HSG failed to comply with multiple established cybersecurity frameworks, including the NIST Cybersecurity Framework, the Center for Internet Security's Critical Security Controls ("CIS CSC"), and the requirements of the Health Insurance Portability and Accountability Act ("HIPAA") Security Rule, 45 C.F.R. Part 164, Subpart C.

37. Defendant's specific security failures include, but are not limited to: (a) failing to encrypt sensitive Private Information; (b) failing to implement adequate firewalls, access controls, and network monitoring; (c) failing to ensure its software and systems were up to date and patched against known vulnerabilities; and (d) failing to provide adequate training to its employees on cybersecurity threats.

**V. Plaintiff Stanley Williamson's Experience**

38. Plaintiff Stanley Williamson is a former employee of HSG, having worked as Director of Environmental Sciences from November 2017 to March 2022. As a condition of his employment, Plaintiff Williamson was required to provide HSG with his sensitive Private Information, including his Social Security number, driver's license information, and direct deposit banking information.

39. On or about September 2, 2025, Plaintiff Williamson received a notice letter from HSG dated August 25, 2025, informing him that his Private Information was compromised in the Data Breach.

40. As a direct and proximate result of the Data Breach, Plaintiff Williamson has already suffered actual injury. In August 2025, prior to receiving the notice, he discovered fraudulent charges on his credit card. The account had to be closed, and cybercriminals continue

to attempt to make charges on the closed account.

41. Plaintiff Williamson now faces an imminent, substantial, and ongoing risk of further identity theft and fraud. He has been forced to spend significant time dealing with the consequences of the Data Breach, including monitoring his financial accounts and credit reports, and will have to continue these mitigation efforts for the foreseeable future. This is valuable time he would have otherwise spent on his work, family, and other personal pursuits.

42. The Data Breach has caused Plaintiff Williamson to suffer significant anxiety, stress, and fear for his financial security and the integrity of his identity. He has suffered lost time, annoyance, interference, and inconvenience, and has a continuing interest in ensuring that his Private Information that remains in HSG's possession is protected from future breaches.

## VI. Criminals Target and Exploit Stolen Private Information

43. HSG knew or should have known that the Private Information it collected and stored was a prime target for cybercriminals. The healthcare sector has long been recognized as uniquely vulnerable to cyberattacks due to the immense value of the data it holds.

44. It is widely known that PII and PHI are valuable commodities traded on the "dark web," an encrypted part of the internet where criminals buy and sell stolen data. As a 2025 Kroll report noted, "the healthcare industry was the most breached" in 2024, accounting for 23% of all breaches.[3]

45. The Private Information compromised in the Data Breach is particularly valuable. The FBI has warned that criminals specifically target healthcare organizations for this information.

46. Cybercriminals use stolen PII and PHI to commit a variety of crimes, including opening new financial accounts, filing fraudulent tax returns, obtaining medical services, and

[3] Data Breach Outlook, KROLL, https://www.kroll.com/en/insights/publications/cyber/data-breach-outlook-2025 (last accessed Sept. 5, 2025).

securing government benefits in the victims' names.

47. Stolen health information also creates a unique risk of extortion. As cybersecurity experts have noted, criminals can leverage sensitive details about a person's medical conditions or illnesses to coerce or extort victims.

48. Given the well-publicized history of data breaches in the healthcare sector and repeated warnings from the FBI and other authorities, the risk of an attack like the one that occurred was not only foreseeable but a near certainty for an entity like HSG that failed to take adequate precautions.

## VII. The Data Breach Caused Lasting Harm to Plaintiff and the Class

49. As a direct and proximate result of HSG's failure to protect their Private Information, Plaintiff and the Class have suffered and will continue to suffer significant and concrete harm. The injuries are not speculative; they are actual and ongoing.

50. Plaintiff and Class Members now face a substantial and imminent risk of identity theft, financial fraud, and medical fraud that will persist for the rest of their lives. Unlike a compromised credit card, which can be canceled, a Social Security number, date of birth, and medical history are permanent. Once this data is in the hands of criminals, the risk of misuse is perpetual.

51. The ramifications of the Data Breach have forced Plaintiff and Class Members to spend, and continue to spend, significant time and money to mitigate these risks. These mitigation efforts include, but are not limited to: monitoring financial and medical statements for fraudulent activity; purchasing credit monitoring and identity theft protection services; placing and managing credit freezes and fraud alerts; spending time on the phone with financial institutions and government agencies to address fraudulent activity or secure accounts; and dealing with the influx

of spam, phishing, and scam attempts that result from their information being available to criminals.

52. Plaintiff and the Class have also suffered a compensable loss from the diminution in value of their Private Information. This information is a valuable asset, which they entrusted to HSG in exchange for employment or services, reasonably expecting it would be kept secure. By allowing this asset to be stolen, HSG deprived Plaintiff and the Class of the value of their data.

53. Finally, Plaintiff and the Class have suffered non-economic damages, including invasion of privacy, anxiety, stress, fear, and frustration resulting from the compromise of their most sensitive information and the ongoing threat of misuse.

## VIII. Defendant's Conduct Violated Legal and Industry Standards

54. Defendant had duties under federal law, including HIPAA and Section 5 of the Federal Trade Commission Act ("FTC Act"), as well as common law and its own policies, to protect the Private Information it collected and stored. Defendant systematically violated these duties by failing to implement and maintain reasonable and appropriate data security measures, directly and proximately causing the Data Breach.

### 1. Defendant Violated HIPAA

55. As a national provider of services to healthcare facilities, Defendant acts as a "business associate" as defined by HIPAA, 45 C.F.R. § 160.103. As such, Defendant is directly required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C.

56. The HIPAA Security Rule requires Defendant to implement appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of all electronic protected health information ("ePHI") that it creates, receives, maintains,

or transmits.

57. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also required Defendant to provide notice of the Data Breach to affected individuals "without unreasonable delay and in no case later than 60 calendar days following the discovery of a breach." Defendant discovered the breach on October 7, 2024, and provided notice on or around August 25, 2025, nearly eleven months after the Data Breach, in a clear violation of this rule.

58. The Data Breach itself, resulting from a successful cyberattack, demonstrates Defendant's failure to comply with the safeguards mandated by HIPAA. Upon information and belief, Defendant's specific security failures include, but are not limited to, the following:

a. Failing to ensure the confidentiality, integrity, and availability of all ePHI that it creates, receives, maintains, and transmits, in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against reasonably anticipated threats or hazards to the security or integrity of ePHI, in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against reasonably anticipated uses or disclosures of ePHI that are not permitted, in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to conduct an accurate and thorough assessment of the potential risks and vulnerabilities to the confidentiality, integrity, and availability of ePHI held by Defendant, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(A);

e. Failing to implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(B);

f. Failing to implement technical policies and procedures for electronic information systems that maintain ePHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

g. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

h. Failing to implement procedures to identify and respond to suspected or known security incidents and mitigate their harmful effects, in violation of 45 C.F.R. §

164.308(a)(6); and

i. Failing to implement a security awareness and training program for all members of its workforce, in violation of 45 C.F.R. § 164.308(a)(5).

**2. Defendant Failed to Comply with FTC Guidelines**

59. Defendant was also prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45, from engaging in "unfair . . . acts or practices in or affecting commerce."

60. The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

61. The FTC has promulgated numerous guides for businesses, such as *Protecting Personal Information: A Guide for Business*, which establish cybersecurity guidelines and highlight the importance of implementing reasonable data security practices. These guidelines make clear that businesses should protect the personal information they keep; encrypt sensitive data; understand their network's vulnerabilities; limit data retention; and monitor for suspicious activity.

62. Defendant failed to follow these basic, well-established guidelines. Upon information and belief, Defendant failed to:

a. Encrypt the sensitive Private Information it stored on its computer networks;

b. Implement an intrusion detection system and monitor network traffic to expose a breach as soon as it occurred;

c. Limit access to sensitive data to only those employees with a legitimate business need;

d. Require the use of industry-tested security measures like multi-factor authentication; and

e. Have an adequate response plan ready to execute in the event of a breach.

63. The FTC has brought dozens of enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating such failures as an unfair act or practice prohibited by Section 5 of the FTC Act.

64. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and the Class's Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

**3. Defendant Failed to Comply with Industry Standards**

65. Defendant's conduct also fell well below accepted industry standards for data security. As a large, national provider of services to the healthcare industry, Defendant knew or should have known it was a prime target for cybercriminals and that its data security practices needed to be robust.

66. Several best practices are standard in the industry to protect against the exact type of attack that occurred here. Upon information and belief, Defendant failed to implement many of these basic safeguards, including: educating and training employees on cybersecurity threats; requiring strong passwords and multi-factor authentication; implementing multi-layer security with firewalls, anti-virus, and anti-malware software; encrypting sensitive data both at rest and in transit; backing up data securely; and limiting employee access to sensitive data.

67. Upon information and belief, Defendant failed to meet the minimum standards of recognized cybersecurity frameworks, which are established standards for reasonable cybersecurity readiness, including:

a. **The NIST Cybersecurity Framework Version 2.0**[4], including by failing to meet the minimum standards of controls such as PR.AA-01 (Account Management), PR.AT-01 (Security Awareness Training), PR.DS-01 (Data-at-Rest Protection),

[4] https://www.nist.gov/cyberframework (last accessed Sept. 9, 2025).

DE.CM-01 (Network Monitoring), and RS.CO-04 (Incident Communication); and

b. **The Center for Internet Security's Critical Security Controls[5] (CIS CSC)**, a prioritized set of actions that form a defense-in-depth set of best practices that mitigate the most common attacks against systems and networks.

68. These frameworks and practices are the accepted industry standard of care. Defendant's failure to comply with these standards was unreasonable and a direct and proximate cause of the Data Breach and the resulting harm to Plaintiff and the Class.

## IX. Plaintiff and the Class have been harmed by Defendant's conduct

69. As a direct and proximate result of Defendant's failure to protect their Private Information, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff and Class Members must now and in the future take time and effort, and spend money, to mitigate the actual and potential impact of the Data Breach on their lives.

70. The injuries suffered by Plaintiff and the Class, or likely to be suffered as a direct result of Defendant's Data Breach, are not speculative. They include: (a) theft and improper disclosure of their valuable Private Information; (b) the imminent and certainly impending injury flowing from actual and potential fraud and identity theft; (c) damages to and diminution in value of their Private Information; (d) loss of the benefit of the bargain they made with Defendant; (e) ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach; (f) loss of privacy; (g) emotional distress, stress, anxiety, and annoyance; and (h) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches.

[5] https://www.cisecurity.org/controls (last accessed Sept. 9, 2025).

**1. The Stolen Private Information is a Valuable Commodity that Places Victims at Risk**

71. The Private Information compromised in the Data Breach is a valuable commodity on both legitimate and illegitimate markets. American companies are estimated to have spent over $19 billion acquiring consumer data in 2018, demonstrating its significant legitimate value. The data stolen from HSG is particularly prized on the dark web.

73. PHI is referred to as a treasure trove for criminals. The value of this data is why cybercriminals engage in financially motivated attacks. They monetize the information by selling it on the dark web to other criminals who use it to commit a variety of identity-theft related crimes.

**2. The Consequences of the Data Breach are Grave and Long-Lasting**

75. The ramifications of Defendant's failure to secure Private Information are severe and enduring. Once data is stolen and released onto the dark web, it can never be fully recovered, and fraudulent use of that information may continue for years. As the U.S. Government Accountability Office has noted, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.

76. With the stolen Private Information, criminals can: Open new financial accounts, credit cards, or loans in victims' names; File fraudulent tax returns to steal tax refunds; Use victims' names and Social Security numbers to obtain government benefits; Obtain medical services or prescription drugs, creating false entries in victims' medical records that could affect their future care; Provide victims' personal information to police during an arrest, resulting in the issuance of arrest warrants in victims' names; Commit "social engineering" or phishing attacks, using the stolen data to gain victims' trust and manipulate them into disclosing additional

information.

77. The theft of a Social Security number is particularly pernicious. Unlike a credit card, an SSN cannot be easily changed. An individual cannot obtain a new SSN without significant paperwork and evidence of actual, ongoing harm. Even then, credit bureaus can quickly link the new number to the old one, meaning the negative information on the old number migrates to the new number.

### 3. Plaintiff and the Class Have Lost Time and Incurred Costs to Mitigate the Harm

78. As a direct result of the Data Breach, a reasonable person is expected to take steps to address the dangerous situation and mitigate the risk of identity theft. Failure to do so could expose the individual to even greater financial harm.

79. Plaintiff and Class Members have spent, and will continue to spend, valuable and irreplaceable time on mitigation activities, including: researching the Data Breach; closely monitoring their financial, credit, and medical account statements; placing and managing fraud alerts and credit freezes; disputing fraudulent charges; and securing their accounts.

80. These mitigation efforts are consistent with the very steps Defendant recommended in its belated notice letter, which instructs victims to "remain vigilant in reviewing your financial account statements and credit reports for fraudulent or irregular activity on a regular basis."

81. These harms are not speculative. As detailed below, Plaintiff Williamson has already experienced fraudulent charges on his credit card and has been forced to spend his personal time dealing with the fallout of Defendant's security failures.

### 4. Diminution in Value of Private Information

82. Private Information is a valuable property asset. An active and robust legitimate marketplace for this data exists, with the data brokering industry being worth roughly $200 billion.

83. As a result of the Data Breach, Plaintiff's and the Class's Private Information, which has an inherent market value, has been damaged and diminished by its compromise and widespread release to unauthorized criminals. This transfer of value occurred without any consideration paid to Plaintiff or the Class for their property, resulting in a direct economic loss. The rarity and confidentiality of their data has been destroyed.

**5. Loss of the Benefit of the Bargain**

84. Plaintiff and Class Members entered into relationships with Defendant (either as employees or as patients of Defendant's clients) with the reasonable understanding and expectation that Defendant would use a portion of the value exchanged to provide adequate data security. This expected security was a part of the benefit of the bargain.

85. Defendant failed to provide the expected data security. Accordingly, Plaintiff and the Class received services (or employment) of a lesser value than what they reasonably expected to receive. They did not get what they bargained for, and have been damaged by overpaying for services and/or being undercompensated for labor that came without the promised data protection.

**6. The Future Cost of Lifetime Credit and Identity Theft Monitoring is Reasonable and Necessary**

86. Given the permanent nature of the compromised Private Information, including Social Security numbers and medical histories, Plaintiff and the Class face a lifelong risk of identity theft and fraud.

87. Defendant's offer of a single year of credit monitoring services is wholly inadequate to protect Plaintiff and the Class from this perpetual threat. The reasonable and necessary cost to monitor and protect Class Members from the risks arising from Defendant's Data Breach must extend for their lifetimes.

88. The retail cost of comprehensive credit and identity theft monitoring can be

approximately $200 per year per person.[6] This is a reasonable and necessary future cost that Plaintiff and Class Members must now bear for years, if not decades, solely due to Defendant's failure to safeguard their Private Information.

**7. Defendant's Unreasonable Delay Exacerbated the Harm**

89. Defendant discovered the Data Breach on or about October 7, 2024, yet it waited nearly eleven months to notify victims. This inexcusable delay is a flagrant violation of the HIPAA Breach Notification Rule, which requires notice no later than 60 days after discovery. 45 C.F.R. §§ 164.400-414.

90. This delay critically hampered the ability of Plaintiff and the Class to take timely, proactive measures to protect themselves. For nearly a year, while their data was being traded and used by criminals on the dark web, Plaintiff and the Class were unaware and unable to place fraud alerts, freeze their credit, or take other essential defensive steps. This delay significantly increased the likelihood of successful fraud and identity theft, exacerbating the harm caused by the Data Breach.

**8. Plaintiff Stanley Williamson's Experience Demonstrates the Concrete Harm**

91. As a direct and traceable result of the Data Breach, Plaintiff Stanley Williamson has suffered actual injury. In August 2025, Mr. Williamson discovered fraudulent charges on his credit card. He was forced to cancel the card and continues to see attempts by cybercriminals to use the closed account.

92. The Data Breach has forced Plaintiff Williamson to spend significant personal time monitoring his financial accounts, disputing fraudulent charges, and attempting to secure his

---

[6] https://money.usnews.com/credit-cards/articles/should-you-use-a-credit-monitoring-service#:~:text=You%20can%20look%20out%20for,to%20pay%20for%20credit%20monitoring (last accessed Sept. 9, 2025).

identity. This is valuable time he would otherwise have spent on his work and with his family, and this time has been lost forever.

93. Plaintiff Williamson has also suffered actual injury from the exposure and theft of his Private Information, which violates his right to privacy and has caused him significant anxiety, fear, and stress about his financial security. He faces an imminent and impending injury arising from the substantially increased risk of future fraud, misuse, and identity theft.

94. Plaintiff Williamson has a continuing interest in ensuring that his Private Information, which remains in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

95. Plaintiff brings this class action individually and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks certification of the claims and issues in this action on a class-wide basis under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4).

96. The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class**

> All individuals residing in the United States whose Private Information was compromised as a result of the Data Breach publicly announced by Healthcare Services Group, Inc. on or about August 25, 2025.

97. Excluded from the Class are: (a) Defendant and its parents, subsidiaries, affiliates, officers, directors, and any entity in which Defendant has a controlling interest; (b) all individuals who make a timely election to be excluded from this proceeding; (c) the Judge to whom this case is assigned and any member of the Judge's staff and immediate family; and (d) the legal representatives, successors, or assigns of any such excluded person or entity.

98. Plaintiff reserves the right to amend the Class definition or to propose subclasses in subsequent pleadings and motions for class certification as may be appropriate based on facts learned through discovery.

99. This action satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Federal Rule of Civil Procedure 23.

100. **Numerosity (Fed. R. Civ. P. 23(a)(1))**: The members of the Class are so numerous that their individual joinder is impracticable. On information and belief, based on Defendant's own notice to the Maine Attorney General, the Data Breach compromised the Private Information of approximately 624,496 individuals. The identities and addresses of Class Members are ascertainable from Defendant's records, as demonstrated by Defendant's ability to send them notice of the Data Breach.

101. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3))**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect only individual members. These common questions include, but are not limited to:

a. Whether Defendant owed a duty to Plaintiff and the Class to implement and maintain reasonable security procedures and practices to protect their Private Information;

b. Whether Defendant failed to adequately safeguard Plaintiff's and the Class's Private Information;

c. Whether Defendant's data security systems and practices violated the FTC Act, HIPAA, and/or other applicable laws, regulations, and industry standards;

d. Whether Defendant knew or should have known that its computer systems and data security practices were vulnerable to a cyberattack;

e. Whether the Data Breach was the foreseeable and proximate result of Defendant's wrongful conduct;

f. When Defendant actually learned of the Data Breach and whether its response was adequate;

g. Whether Defendant failed to provide timely, adequate, and accurate notice of the Data Breach to Plaintiff and the Class without unreasonable delay, and whether this failure caused damages;

h. Whether Defendant's offer of one year of credit monitoring is adequate to compensate Class Members for their lifelong risk of identity theft;

i. Whether Defendant was unjustly enriched by collecting and storing the Private Information of Plaintiff and the Class while failing to provide adequate security;

j. Whether Defendant's actions constitute negligence and/or negligence per se;

k. Whether Plaintiff and the Class suffered injury and ascertainable losses as a direct and proximate result of Defendant's actions and failures to act;

l. Whether Plaintiff and the Class are entitled to recover damages, including actual, compensatory, statutory, and punitive damages; and

m. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief, and if so, what relief is necessary to redress the imminent and ongoing harm they face.

102. **Typicality (Fed. R. Civ. P. 23(a)(3))**: Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all Class Members, entrusted his Private Information to Defendant. Defendant subjected all Class Members to the same wrongful conduct by failing to secure its systems, resulting in the same Data Breach that compromised all Class Members' data. Plaintiff and all Class Members were injured by the same wrongful acts and omissions and face the same ongoing risks of identity theft and fraud. The relief Plaintiff seeks is typical of the relief sought for the Class.

103. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))**: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with, and not antagonistic to, the interests of the Class Members he seeks to represent. Plaintiff has retained counsel who are competent and highly experienced in litigating data breach and complex class

action lawsuits. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class.

104. **Superiority (Fed. R. Civ. P. 23(b)(3))**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of this complex litigation against a large corporation. It would be prohibitively expensive and impracticable for individual Class Members to seek redress for Defendant's wrongdoing. Absent a class action, Defendant will likely retain the benefits of its misconduct and escape liability, and Class Members will have no effective remedy. Individualized litigation would also create a risk of inconsistent or contradictory judgments and would be an inefficient use of the parties' and the judiciary's resources. The class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

105. **Injunctive and Declaratory Relief (Fed. R. Civ. P. 23(b)(2))**: This class action is also appropriate for certification under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class, making final injunctive and declaratory relief appropriate with respect to the Class as a whole. Defendant's systemic failure to protect Private Information and its failure to provide adequate protection for the future affects all Class Members uniformly. Unless a class-wide injunction is issued, Defendant may continue its failure to properly secure the Private Information of Class Members, subjecting them to an ongoing risk of future harm.

106. **Manageability**: This case is manageable as a class action. The identities of Class Members are ascertainable through Defendant's records. The common issues of law and fact

predominate, and the presentation of evidence on these issues can be accomplished efficiently on a class-wide basis.

107. Alternatively, and without limiting the foregoing, Plaintiff seeks certification of particular issues under Fed. R. Civ. P. 23(c)(4), as the resolution of these common issues would materially advance the litigation for all Class Members. These issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise reasonable care in collecting, storing, and safeguarding their Private Information;

b. Whether Defendant breached that legal duty by failing to implement and maintain reasonable security measures;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards, including the FTC Act and HIPAA, relating to data security;

d. Whether Defendant's failure to provide timely and adequate notice of the Data Breach constitutes negligence and violates its common law duties; and

e. Whether Plaintiff and the Class are entitled to injunctive relief, and if so, the appropriate scope of such relief.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Class)

108. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

109. Defendant solicited, gathered, and stored the Private Information of Plaintiff and the Class as a necessary condition of employment or as part of providing its services to healthcare facilities.

110. Upon accepting and storing the Private Information of Plaintiff and Class Members,

Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information, to use secure methods to do so, and to destroy the information once it was no longer needed.

111. This duty of care arose from the special relationship between Defendant and Plaintiff and the Class Members. Plaintiff and the Class entrusted Defendant with their highly sensitive Private Information with the reasonable expectation and mutual understanding that Defendant would protect it. Defendant was in a superior position of knowledge and control with respect to the security of its data systems, and Plaintiff and the Class Members had no ability to protect the information that was in Defendant's possession.

112. Defendant's duty of care also arose from the foreseeability of harm. Defendant knew or should have known that its business of providing services to the healthcare industry and its status as a large national employer made it a prime target for cyberattacks. The risk of a data breach and the subsequent harm to individuals whose data was stolen was a foreseeable and probable consequence of Defendant's failure to maintain adequate security.

113. Defendant's duty of care is further established by its own express promises to protect the data it held, as stated in its Information Security Policy, and is defined by federal law, including Section 5 of the FTC Act and HIPAA, and by established industry standards, including the NIST Cybersecurity Framework and the CIS Critical Security Controls.

114. Defendant had additional duties to: (a) implement processes to quickly detect a data breach; (b) act upon security warnings in a timely fashion; and (c) provide timely, accurate, and adequate notice of any data breach to Plaintiff and the Class Members to allow them to take appropriate steps to mitigate their harm.

115. Defendant breached its duties to Plaintiff and the Class and was negligent in failing

to use reasonable care to protect their Private Information. Defendant's specific negligent acts and omissions include, but are not limited to:

a. Failing to adopt, implement, and maintain reasonable and adequate data security measures to safeguard Plaintiff's and Class Members' Private Information;

b. Failing to encrypt sensitive Private Information, rendering it readable and usable by unauthorized actors upon exfiltration;

c. Failing to implement industry-standard security measures such as multi-factor authentication, adequate firewalls, and network intrusion detection systems;

d. Failing to adequately monitor its own networks and systems for security intrusions and vulnerabilities;

e. Failing to detect the unauthorized access to its systems in a timely manner;

f. Failing to properly train its employees on cybersecurity best practices and threats;

g. Failing to delete the Private Information of former employees and others for whom it no longer had a business need to retain the data; and

h. Failing to provide prompt, adequate, and accurate notice of the Data Breach to Plaintiff and the Class, waiting nearly eleven months after discovery to do so.

116. But for Defendant's negligent conduct and breach of its duties, the Data Breach would not have occurred, and the Private Information of Plaintiff and the Class would not have been stolen and released to criminals.

117. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered, and will continue to suffer, actual injuries and damages, including: the fraudulent use of their financial accounts; theft and diminution in value of their Private Information; the loss of privacy; out-of-pocket expenses and the value of their time spent on mitigation efforts; the loss of the benefit of their bargain with Defendant; and the ongoing and imminent threat of future identity theft, financial fraud, and medical fraud, as well as the accompanying anxiety, stress, and emotional distress.

**<u>COUNT II</u>**
**NEGLIGENCE *PER SE***
**(On behalf of Plaintiff and the Class)**

118. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

119. As alleged herein, Defendant violated its duties under federal statutes, including Section 5 of the FTC Act, 15 U.S.C. § 45, and HIPAA, 45 C.F.R. §§ 164.306, 164.308, 164.312, and the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414.

120. Section 5 of the FTC Act prohibits "unfair... practices in or affecting commerce," which, as interpreted and enforced by the FTC, includes the failure of a business to implement reasonable and appropriate data security measures to protect consumers' sensitive information. Defendant's failure to safeguard Private Information constitutes an unfair practice under the FTC Act.

121. HIPAA's Security and Breach Notification Rules required Defendant, as a business associate, to implement specific technical, administrative, and physical safeguards to protect ePHI and to provide notice of any breach of unsecured PHI "without unreasonable delay" and in no case later than 60 days following discovery. Defendant's failure to prevent the breach and its nearly eleven-month delay in providing notice violated these provisions.

122. These statutes were enacted to protect the safety and privacy of individuals like Plaintiff and the Class Members and to prevent the exact type of harm that occurred here—the theft and unauthorized disclosure of sensitive Private Information and the resulting risk of identity theft and fraud.

123. Defendant's violations of the FTC Act and HIPAA constitute negligence per se.

124. The injuries and damages suffered by Plaintiff and the Class were the direct and

proximate result of Defendant's violation of these statutes. But for Defendant's failure to comply with its statutory duties, Plaintiff and the Class would not have been harmed.

125. As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered damages as described herein and are entitled to damages in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Class)**

126. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

127. When Plaintiff and Class Members provided their Private Information to Defendant as a condition of employment or as part of receiving services through Defendant's clients, they entered into implied contracts with Defendant.

128. A material term of these implied contracts was Defendant's promise to safeguard the Private Information of Plaintiff and the Class and to provide timely and accurate notice in the event of a data breach. In exchange for the benefits of Plaintiff's and the Class's labor, service payments, and the data itself, Defendant implicitly agreed to provide adequate data security. This was a critical part of the benefit of the bargain for which Plaintiff and the Class provided consideration.

129. Plaintiff and Class Members reasonably believed and expected that Defendant would use a portion of the value it received to fund adequate data security measures consistent with its promises, industry standards, and legal requirements.

130. Plaintiff and Class Members fully performed their obligations under these implied contracts, including by providing their Private Information to Defendant.

131. Defendant materially breached its implied contracts with Plaintiff and the Class by failing to implement and maintain reasonable security measures to protect their Private Information and by failing to provide timely and adequate notice of the Data Breach.

132. As a direct and proximate result of Defendant's breach of its implied contracts, Plaintiff and the Class have been damaged. They did not receive the full benefit of their bargain, as the services and/or employment they received were of a diminished value due to the lack of adequate data security. They have also suffered consequential damages, including out-of-pocket costs and the value of their time spent mitigating the harms of the breach, and face the ongoing risk of identity theft and fraud.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
## (On behalf of Plaintiff and the Class)

133. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

134. A special relationship of trust and confidence existed between Defendant and Plaintiff and the Class. By collecting and holding their most sensitive Private Information, Defendant became a fiduciary with respect to that data, undertaking a duty to act primarily for the benefit of Plaintiff and the Class in safeguarding that information.

135. Plaintiff and the Class were in a position of vulnerability and were exclusively dependent on Defendant to implement and maintain adequate data security practices. They reposed their trust and confidence in Defendant to protect their Private Information from unauthorized disclosure and had no control over the manner in which Defendant secured its systems.

136. Defendant accepted this fiduciary duty by soliciting, collecting, and storing this sensitive information and by making representations that it would protect the data.

137. Defendant breached its fiduciary duty to Plaintiff and the Class by, among other things: failing to implement and maintain sufficient safeguards to protect their Private Information; failing to diligently discover and investigate the Data Breach; and failing to provide prompt, accurate, and adequate notice of the Data Breach.

138. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and the Class have suffered and will continue to suffer damages, including the compromise and theft of their Private Information, loss of privacy, out-of-pocket expenses to mitigate the risk of identity theft, and the substantial and ongoing risk of future harm.

**COUNT V**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class, Pleaded in the Alternative)**

139. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein. This claim is pleaded in the alternative to Plaintiff's breach of contract claim.

140. Plaintiff and Class Members conferred a benefit upon Defendant. This benefit included the provision of their valuable Private Information, which Defendant used for its business operations and commercial gain. The benefit also included the portion of payments for services or the value of labor that was intended to fund reasonable data security.

141. Defendant appreciated, accepted, and retained this benefit. Defendant understood it was being entrusted with valuable data and that its revenues were predicated on the provision of services that included, at least implicitly, data protection.

142. Defendant enriched itself by saving the costs it reasonably should have expended on adequate data security measures. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant, upon information and belief, increased its own profits

at the expense of Plaintiff and the Class by utilizing cheaper, ineffective security measures.

143. Under principles of equity and good conscience, it would be unjust and inequitable for Defendant to be permitted to retain the benefits it received from Plaintiff and the Class, including the money it saved by forgoing adequate data security, without fully compensating them for the harms caused by its conduct.

144. Plaintiff and the Class are entitled to restitution from Defendant, and an order of disgorgement of all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and the Class may seek restitution.

**COUNT VI**
**DECLARATORY JUDGMENT**
**(On behalf of Plaintiff and the Class)**

145. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

146. Plaintiff brings this count pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

147. An actual, present, and justiciable controversy exists between Plaintiff and the Class on the one hand, and Defendant on the other. Plaintiff and the Class contend, and Defendant disputes, that Defendant's data security measures remain inadequate to protect their Private Information, which Defendant continues to possess, and that this inadequacy violates Defendant's legal duties and places them at a continuing and imminent risk of future harm.

148. Plaintiff and the Class have a continuing interest in ensuring that their Private Information is protected from additional breaches. Defendant's vague notice letter fails to specify what concrete steps, if any, it has taken to remedy the security failures that led to the Data Breach.

149. Plaintiff, for himself and the Class, therefore seeks a declaration that:

a. Defendant's existing data security measures do not comply with its common law and statutory duties of care to provide reasonable and appropriate security to protect the Private Information in its possession; and

b. To comply with its duties of care, Defendant must implement and maintain comprehensive and reasonable security measures, including, but not limited to, encrypting all sensitive data, undergoing regular third-party security audits, and providing adequate cybersecurity training to its employees.

150. A declaratory judgment is necessary to define the rights and obligations of the parties and will serve to prevent future harm by compelling Defendant to reform its data security practices. Plaintiff and the Class have no adequate remedy at law to address this ongoing threat.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Stanley Williamson, on behalf of himself and the Class, respectfully prays for judgment against Defendant and requests that the Court enter an Order granting the following relief:

A. An Order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative for the Class, and appointing Plaintiff's counsel as Class Counsel;

B. A judgment in favor of Plaintiff and the Class on all counts asserted herein and a declaration that Defendant's conduct violates the laws referenced in this Complaint;

C. An award of damages to Plaintiff and the Class, including actual, compensatory, consequential, nominal, statutory, and punitive damages, in an amount to be determined at trial;

D. An award of equitable relief, including restitution to and disgorgement of all profits, benefits, and other compensation unjustly obtained by Defendant as a result of its wrongful conduct;

E. An Order providing for injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, but not limited to, prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. Requiring Defendant to protect, including through encryption, all Private

Information it collects and stores in accordance with all applicable regulations and industry standards;

iii. Requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and the Class;

iv. Requiring Defendant to purge, delete, and destroy in a secure manner the Private Information of Plaintiff and Class Members that is not necessary for its provision of services or other legitimate business purposes;

v. Requiring Defendant to engage independent, third-party security auditors/penetration testers to conduct testing, including simulated attacks and audits, on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such auditors;

vi. Requiring Defendant to implement and maintain security measures such as adequate firewalls, multi-factor authentication, network segmentation, and sufficient logging and monitoring of its networks to protect against and detect intrusions;

vii. Requiring Defendant to conduct routine and continual internal training and education to inform its employees and personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

viii. Ordering Defendant to purchase and provide lifetime credit monitoring and identity theft insurance and protection services to Plaintiff and the Class; and

ix. Requiring Defendant to meaningfully educate all Class Members about the threats they face as a result of the compromise of their Private Information and the steps they must take to protect themselves;

F. An Order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

G. An award of reasonable attorneys' fees, litigation costs, and other expenses, as allowable by law;

H. An award of pre-judgment and post-judgment interest on all amounts awarded; and

I. Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff, on behalf of himself and the Class, demands a trial by jury on all claims so triable.

Dated: September 11, 2025

Respectfully submitted,

*/s/ Zachary Arbitman*

Zachary Arbitman (PA Bar No. 314274)
George Donnelly (PA Bar No. 321317)
**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
Facsimile: (215) 567-8333
zarbitman@feldmanshepherd.com
gdonnelly@feldmanshepherd.com

*Attorneys for Plaintiff and the Proposed Class*